UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80064-CR-SMITH/MAYNARD

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

FRANK STANZIONE,

      Defendant.

_____/

**DEFENDANT'S SECOND SUPPLEMENT TO REPLY TO
GOVERNMENT'S RESPONSE TO MOTION TO DISMISS
INDICTMENT FOR SELECTIVE PROSECUTION**

The Defendant, Frank Stanzione, through counsel and pursuant to the First Amendment and Federal Rule of Criminal Procedure 12(b)(3)(A), files the following Second Supplement to his reply [DE:17] to the government's response [DE:16] to his previously filed motion to dismiss the indictment in this case as a matter of law. In supplement to his reply thereof, the Defendant states the following:

**1.  Additional cases for consideration of disparate treatment:**

On May 30, 2017, Kamran Ebrahim was arrested pursuant to a criminal complaint charging threats against the President and a retaliatory threat against a law enforcement official in violation of 18 U.S.C. § 871 and 18 U.S.C. § 115 (a multiple threats case), in the Southern District of Florida.

Ebrahim was charged after investigation revealed that he had made threats against President Trump, the White House, and a Secret Service Agent while being hospitalized at a facility in Palm Beach County for mental health. This included a statement that he hated the Secret Service Agent and would rip his throat out when he saw him. He also stated: "I will nuke the White House." Additionally, while being Baker Acted for suicidal ideation and drug use, he threatened police and stated he would assassinate the President. During a subsequent interview with Secret Service Agents, he was apologetic and cooperative. *United States v. Ebrahimi,* 17-MJ-08192-WM [DE:1]; *United States v. Ebrahimi,* 19-CR-80057-RLR [DE:50] Ebrahimi was granted pre-trial diversion in that case. Id at DE:35 & 38.

After violating pre-trial diversion, Ebrahimi was charged by a one-count information not with any threat against the President, but only with resisting or obstructing, or intimidating by force a Secret Service Agent, in violation of 18 U.S.C. § 111(a)(1), which is a misdemeanor with a one-year maximum possible sentence. *United States v. Ebrahimi,* 19-CR-80057-RLR [DE:40]. While on bond in that case, Ebrahimi tested positive for the use of cocaine. Id. at DE:44. Nonetheless, he was sentenced to a term of six-months-probation. Id. at DE:52. After four violations of probation, he was sentenced a to a term of 4-months incarceration. Id. at DE:70 & 74.

This is further evidence of disparate treatment by the U.S. Attorney's Office for the Southern District of Florida towards the Defendant. While not Baker Acted, the government is aware of the Defendant's mental health at the time of this alleged offense. The Defendant was on-medical-leave from his employment at the time of this

alleged offense due to a major depressive order and had been forced to move in with his parents due to suicidal ideations. The Defendant has a documented and long standing mental health condition of major depression. Further, the Defendant was self-administering alcohol during this time period and was under the influence at the time of the alleged offense. As such, the Defendant's case is similar to that in Ebrahimi, though less serious in the sense that he did not forcefully threaten or intimidate a Secret Service Agent or violate terms of bond. Yet, once again, this Defendant is being treated by this prosecutor's office far more severely. Ebrahimi is heterosexual.

Also supporting the Defendant's motion is *United States v. Laurence Key,* 18-14053-CR-JEM, prosecuted by the U.S. Attorney's Office for the Southern District of Florida. Key was arrested after calling and speaking to an intern in Congressman Brian Mast's office, and telling them: "I'm going to find the congressman's kids and kill them. If you are going to separate kids at the border, I'm going to kill his kids. Don't try to find me because you won't." *United States v. Laurence Key,* 18-14053-CR-JEM [DE:1]. Records revealed Key had also called the offices of Senator's Rubio and Nelson. Id. Records also revealed Key had called Mast's office 478 times. Key was indicted for one count of violating 18 U.S.C. § 875(c). Id. at DE:19. Evidence revealed that Key had previously threatened to poison Mast in a Facebook comment; Key had personally approached and spoke to Mast at a rally and had asked him if his children were with him; and Key had sent an email with a veiled threat of death to Mast that the government argued did not rise to the level of a charge, but was nonetheless

evidence of guilt. Id. at DE:31. The case was dismissed by the U.S. Attorney's Office with prejudice after a jury during trial was unable to reach a verdict.. Id. at DE:69. The case was not re-tried. Once again, this case was a multiple threat case (one of which was in person according to the government's pre-trial brief and statement of the Congressman's wife- Id. at DE:31).

In *United States v. Winegar,* 21-00021-SM (D.NH 2021), Ryder Winegar was arrested for making a series of threats to members of Congress. 21-00021-SM at DE:1-2. He threatened one Congressperson, "Uh, you better support Donald Trump as your president. There has been massive fraud in this country. And if you don't support it, we're going to drag you out and we're going to hang you by your neck to die. Good luck." Id. He threatened a second Congressperson, "but also, really, we're going to hang all you motherfuckers. And it really, really, it boils down to two camps. You either support our president, support liberty, and fuck this global homo, uh, vaccination Jewish agenda, or you're not. In which case we're going to fucking kill you. Do you understand? Like you can be afraid of being doxxed and be outed as a racist and all this shit, which nobody really fucking cares about because there's no consequences, or you can be scared about motherfuckers like me stringing your ass up. Yeah. So do the right goddamn thing and get behind our president and save this country and our Constitution or else you're really going to fucking regret it as the last thought that you have in your stupid little RINO brain. Get it? So stop being a RINO and fucking line up. You got it? Stupid bitch." Id. He threatened a third member of Congress, "I think, you know, I'm not only going to have to register as a Republican

in the future, but I might have to come and hang you personally, like until you die, and all of your aides, including you, who are listening to this right now, like some 24 year old, uh, from Arizona named Chase or some gay name like that. Do the right thing or patriots are going to come, and we're going to fucking kill you all. You understand." Id. he threatened a fourth member of Congress, "You better get behind Donald Trump or we're going to hang you, and I'm going to laugh, and I'm going to pee in your face, and I'm going to fuck your ass, you stupid fucking Democrat, piece of shit, communist [inaudible]." He threatened that member again, "If you're not behind this, then we're going to hang you to die. Do the right thing, or you're going to get caught being a fucking Communist, like a Chinese Communist Party, or actually, yeah. [foreign language] We're going to hang you to death. You understand that?" Id. He threatened another member of Congress, "Like we're going to come hang you, you specifically. And I know who you are." Id. he threatened an additional member of Congress, and their aides, "If you don't get behind him, we're going to hang you until you die. Uh there's there's no other option. You, there's two roads right now." Winegar was believed to be armed. Id. Winegar was charged with six misdemeanor counts of violating 18 U.S.C. § 115(a)(1)(B), and one felony count of violating 18 U.S.C. § 875(c). Id at DE:14. He plead guilty to the indictment. Id. at DE:26. He was sentenced to the bottom of his Guidelines range, 33-months imprisonment. Id. at DE:39. Once more, this is a multiple threats case, which distinguishes it from the defendant's case.

In 2018, Christopher McGowan was charged with one count of violating 18 U.S.C. § 875(c) "based on many 'concerning' and 'threatening' tweets McGowan sent

in which he tagged or otherwise directed comments at a United States congressman."
*United States v. McGowan,* 2022 WL 2654228 at *1 (W.D. VA 2022) (unpublished).
He plead guilty to that charge and was sentenced to a term of time-served and
supervised release. *Id.* Again, that case involved multiple threats to a
Congressperson, distinguishing it from the Defendant's case.

In *United States v. Giffen,* 2019 WL 2720216 (D.OR 2019), the Defendant was
charged with violating 18 U.S.C. § 875(c) after making at least three threats to a
member of Congress, as well as "internet stalking." *Giffen* has never been found
competent to stand trial. Nonetheless, his is also a multiple threats case that is
therefore distinguishable from the Defendant's prosecution.

In a slightly different case, Niviane Phelps was charged by indictment in the
Southern District of Florida with violating a statute similar to § 875(c), for
threatening Vice president Harris. In *United States v. Phelps,* 21-20240-CR-JEM, she
was charged with six counts of threatening the vice president. Id. at DE:15. She plead
guilty in that multiple threats case, and was sentenced to 12-months incarceration.
Id. at DE:55. Once again, this was a multiple threat prosecution.

**2. Conclusion:**

Thus, the data and research from DE:14, DE:17, DE:18, and this pleading
reveal that there are seven categories of prosecutions that have been, have never
been, or are presently being pursued by the government. Those seven categories may
be broken down as follows:

**Category 1: Single & multiple threat cases that were not prosecuted that have been identified:[1]**

Kevin Krohn [this pleading] [threat to president- not Congress]
Bruce Miller [DE:14]
Jonathan Reeser [DE:14]
Aaron Thompson [DE:14]
Michael Kennedy [DE:14]
Kenneth Gaspar [DE:14]

**Category 2: Multiple threats to Congress, 875 charge:**

Joshua Hall [DE:14]
Mark Leonetti [DE:14]
Neil Walter [DE:14]
Charles Gergory [DE:14]
Justin Kuchta [DE:14]
Brian Gaherty [DE:14]
Darryl Varnum [DE:14]
Robert Lemke [DE:14]
Laurence Key [this pleading]
Christopher McGowan [this pleading]
Todd Giffen [this pleading]

**Category 3: Multiple threats to Congress, 875 *and* 115 (misd) charge:**

Robert Vargo [DE:14]
Carlos Bayon [DE:14]
Norman LeBoon [DE:14]
Ryder Winegar [this pleading]

**Category 4: Multiple threats to Congress and 115 (misd) charge:**

Chase Neill [DE:14]
Douglas Casey [DE:14]

**Category 5: SINGLE THREAT to Congress 115 (misd) charge:**

David Hannon [DE:14]

---

1 The Docket Entry where information regarding the listed case can be obtained will be listed next to the case name.

**Category 6: SINGLE THREAT to Congress 875 and 115 (misd) charge and gay offender:**

Allan Poller [DE:14]

**Category 7: SINGLE THREAT to Congress 875 charge and gay offender:**

The Defendant

As the Defendant is the only case in which a single alleged threat to a Congressperson has been charged by the United States solely under 18 U.S.C. § 875(c), (which is a felony), and is one of only two gay-rights activists charged in single alleged threats cases (yet, the Poller case includes a misdemeanor charge which the Defendant's does not), what inference can be drawn? The Defendant is being treated differently from all other similar offenders in the country.

The number of threats is a critical issue in these prosecutions. Because 18 U.S.C. § 875(c) involves a Constitutional right to free speech, and has no requirement (as in typical assault statutes) of an apparent ability to carry out the threat, Courts in these cases must conduct particularly stringent examinations of the conduct to ensure it constitutes a "true threat." *See United States v. Alvarez,* 132 S.Ct. 2537, 2544 (2012). Distinguishing "true threats" from "very crude offensive" speech intended as political hyperbole is a rigorous undertaking that invokes consideration of the First Amendment. *See Watts v. United States,* 394 U.S. 705, 708 (1969).

Some of the factors the Court must consider in making a determination of whether speech constitutes a "true threat" are "the graphic promises of violence made in the phone calls at issue, the tone of the defendant's voice when he conveyed the

threats, **and the number of phone calls made to the victim."** *United States v. Castillo,* 564 Fed.Appx. 500, 503 (11th Cir. 2014)(unpublished)(emphasis added), *citing United States v. Alaboud,* 347 F.3d 1293, 1297 (11th Cir. 2003) (overruled on other grounds). In *United States v. David Hannon,* 22-CR-00134-KKM [DE:33], in the sentencing memorandum filed by the U.S. Attorney's Office for the Middle District of Florida, the government admitted, that the "Defendant's threat was a single instance of criminal conduct," which was a "mitigating factor" in that prosecution for a violation of 18 U.S.C. § 115(a)(1)(B). The government obviously understands that the number of threats involved in a case is an important factor in the "true threat" analysis.

In addition, other factors the Court can look to include whether the communication "was threatening on its face," and whether the alleged threat "included a date, time, and place on which the assassinations would occur," and whether "the defendant had expressed his willingness to accept responsibility for them," and whether, "when he was arrested, the defendant emphasized that he meant everything that he had said." *Id.* at 503, *citing United States v. Callahan,* 702 F.2d 964, 966 (11th Cir. 1983). Towards this end, the Court must consider whether the Defendant, "when confronted with the illegality of his actions, … responded that his initial comment was not a threat, but a promise" and whether, when questioned by law enforcement, whether the Defendant "meant the threat." *Id.* at 503 ("Castillo told the Secret Service that he meant what he had said"). Thus, the number of threats, and post-arrest statements must be considered. Thus, the government in the Middle

District of Florida has acknowledged the mitigating factor of an alleged single threat and the difference between those cases and multiple threat cases. The Defendant is being treated disparately and the only identifiable reasons for such treatment are Constitutionally impermissible.

                Respectfully submitted,

                MICHAEL CARUSO
                FEDERAL PUBLIC DEFENDER

By:    _s/ *Jan C. Smith, II*_____
                Assistant Federal Public Defender
                Florida Bar No. 0117341
                One East Broward Boulevard, Suite 1100
                Fort Lauderdale, Florida 33301-1842
                Tel: 954-356-7436
                Fax: 954-356-7556
                E-Mail: Jan_Smith@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on July 20, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:____s/___*Jan C. Smith, II* AFPD_____