UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80064-CR-SMITH/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

FRANK STANZIONE,

    Defendant.
_____/

### DEFENDANT'S THIRD SUPPLEMENT TO REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS INDICTMENT FOR SELECTIVE PROSECUTION

The Defendant, Frank Stanzione, through counsel and pursuant to the First Amendment and Federal Rule of Criminal Procedure 12(b)(3)(A), files the following Third Supplement to his reply [DE:17] to the government's response [DE:16] to his previously filed motion to dismiss the indictment in this case as a matter of law. In supplement to his reply thereof, the Defendant states the following:

1. **Additional discovery materials have provided additional material in support of the Defendant's motion:**

The Defendant was recently provided a transcript of an interview done by Capital police with him on January 31, 2023. This interview was conducted more than two-months before the filing of the indictment in this case. As such, the information

obtained in the interview was known to the government prior to the indictment in this case.

1) The government was aware at the time they charged the Defendant that he was gay, and that he found Representative Santos offensive to him and the gay community. The Defendant informed the investigators: "I'm gay. I'm offended by him. I don't want him in my community." The Defendant also admitted that because of this he had called Representative Santos's office before, approximately three or four times to communicate his views *without* making any threats. Thus, the government was aware at the time of the indictment in this case that the Defendant was gay, and politically active based on his sexuality towards Representative Santos. Moreover, the Defendant admitted that he made the call in this case after watching an ABC News piece about Representative Santos.

2) The Capital police investigator admitted to the Defendant that they handle "a lot" of these types of investigations, which happen "quite often," but the decision to charge is left up to the U.S. Attorney's office. The investigator stated: "Uh, our policy is that since these statements were made, we have to present it to the US attorney's office. Um, historically, you know, we present a lot to them, 'cause if you can imagine, this stuff happens quite often. Um, not everything moves forward. Uh, and that's completely out of our hands, but it helps that you spoke to us freely, right? Um, you answered all of our questions, um, that goes a long way. So, um, I can't honestly, to, you know,

to be frank with you, I, I can't say one way or the other you will be in trouble or you won't be in trouble." Thus, the large volume of cases admitted to by the agent are additional proof as the Defendant contends, that few, if any of these cases are actually filed by the government. Further, the Defendant (during the interview) dispelled all concerns about the truthfulness of the threat in this case. The agents told the Defendant: "so our, uh, you know, reason for being here today is to help assess that and what your true intentions are." He told the agents in response to questions that he had no travel plans, no weapons, and no special training. He stated he had no intent to carry out the threat, was embarrassed by it and felt shame for making the call. He admitted he should not have made the call. The Defendant could not have been more cooperative with the agents. He informed them of a mental health crisis he was in at that time as well as his significant mental health history. Thus, the government was aware of all of this prior to indicting the Defendant. It is not clear if any of this information was shared with the grand jury in this case, or if only the communication and identity of the Defendant were provided. As noted in the Defendant's previously filed "Second Supplement," several of these factors are highly relevant to the determination of whether a threat is a "true threat." In addition to "the graphic promises of violence made in the phone calls at issue, [and] the tone of the defendant's voice when he conveyed the threats," are the "**number of phone calls made to the victim.**" *United States v. Castillo,* 564 Fed.Appx. 500, 503 (11th Cir. 2014)(unpublished)(emphasis added), *citing*

*United States v. Alaboud,* 347 F.3d 1293, 1297 (11th Cir. 2003) (overruled on other grounds). In addition, other factors the Court can look to include whether "the defendant had expressed his willingness to accept responsibility for them," and whether, "when he was arrested, the defendant emphasized that he meant everything that he had said." *Id.* at 503, *citing United States v. Callahan,* 702 F.2d 964, 966 (11th Cir. 1983). Towards this end, the Court must consider whether the Defendant, "when confronted with the illegality of his actions, … responded that his initial comment was not a threat, but a promise" and whether, when questioned by law enforcement, whether the Defendant "meant the threat." *Id.* at 503 ("Castillo told the Secret Service that he meant what he had said"). The Defendant's statements disavowing the threat were clearly relevant.

WHEREFORE, the Defendant moves this Court to set this motion for a hearing date prior to trial so that the Defendant may issue subpoenas to the witnesses necessary to meet his burden of proof via their testimony regarding this matter, and ensure their travel for purposes of testimony.

        Respectfully submitted,

        MICHAEL CARUSO
        FEDERAL PUBLIC DEFENDER

By:   s/ *Jan C. Smith, II*
        Assistant Federal Public Defender
        Florida Bar No. 0117341
        One East Broward Boulevard, Suite 1100
        Fort Lauderdale, Florida 33301-1842

Tel: 954-356-7436
Fax: 954-356-7556
E-Mail: Jan_Smith@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on August 16, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/ *Jan C. Smith, II* AFPD